Gregory P. Olson (Bar No. 177942)
**LAW OFFICE OF GREGORY P. OLSON**
501 West Broadway, Suite 1370
San Diego, California 92101
(619) 564-3650 ♦ Facsimile (619) 233-1969
greg@olsonesq.com

Daniel Kotchen
Aimee Doyle
**KOTCHEN & LOW LLP**
2300 M Street NW, Suite 800
Washington, DC 20037
(202) 416-1848 ♦ Facsimile (202) 280-1128
dkotchen@kotchen.com
adoyle@kotchen.com

Attorneys for plaintiff IMAGENETIX, INC.

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMAGENETIX, INC.<br><br>Plaintiff,<br><br>v.<br><br>FRUTAROM USA, INC.<br><br>Defendant. | Case No. **'12CV2823 GPC WMC**<br><br>**COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF:**<br><br>(1) BREACH OF CONTRACT<br>(2) INTENTIONAL MISREPRESENTATION<br>(3) NEGLIGENT MISREPRESENTATION<br>(4) FRAUD IN THE INDUCEMENT<br>(5) VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200<br><br>**JURY DEMAND** |

Plaintiff Imagenetix, Inc. hereby alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff Imagenetix, Inc. ("Imagenetix") seeks damages for Defendant Frutarom USA, Inc.'s ("Frutarom") breach of contract. Until November 2011, Frutarom distributed BLIS K12™, a product used to treat various conditions. Frutarom encouraged Imagenetix to manufacture, market, and sell BioGuard™, a product that incorporated BLIS K12™. Frutarom and Imagenetix entered a

1

supply agreement whereby Frutarom agreed to supply BLIS K12™ to Imagenetix and Frutarom warranted that sales of BLIS K12™ were authorized by the FDA. This warranty was false. BLIS K12™ was not approved or authorized by the FDA, which Imagenetix learned only after making substantial investments in BioGuard™. Imagenetix stopped selling BioGuard™ and now seeks all applicable damages for Frutarom's breach of contract.

## PARTIES

2.  Plaintiff Imagenetix is a Nevada corporation with its headquarters and principal place of business at 10845 Rancho Bernardo Road, Suite 105, San Diego, California 92127. Imagenetix is a dietary supplement manufacturing company principally engaged in developing, formulating and marketing over-the-counter, natural-based nutritional supplements and skin care products, including the BioGuard™ chewable tablets that incorporated BLIS K12™.

3.  Defendant Frutarom is a New Jersey corporation with its headquarters and principal place of business at 9500 Railroad Avenue, North Bergen, New Jersey, 07047. Frutarom is a global company that manufactures, distributes, and markets flavors, fragrances, and ingredients to customers in the food, beverage, pharmaceutical, nutraceutical, and cosmetic industries.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over the claims pertaining to the present litigation pursuant to 28 U.S.C. §1332(a)(1) (diversity of citizenship). The matter in controversy exceeds the sum or value of $75,000 USD, exclusive of interest and costs, and is between parties that have their principal place of business and are incorporated in different states.

5.  This Court has personal jurisdiction over Frutarom because Frutarom has established systematic and continuous contacts with California. Frutarom maintains sales and marketing, research and development, and production facilities in California, and is registered as a business entity in California.

6.  Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(1), (b)(2), and (c)(2) because Imagenetix resides and does business in the Southern District of California.

///
///

COMPLAINT

## STATEMENT OF FACTS

7. At the time of the agreement, Frutarom was the exclusive United States distributor of BLIS K12™, a product developed and manufactured by BLIS Technologies, a New Zealand company.

8. Imagenetix was introduced to BLIS K12™ in August of 2008. On March 6, 2009, Imagenetix, Frutarom, and BLIS Technologies met to further discuss BLIS K12™. Frutarom showed a power point presentation about BLIS K12™ and provided Imagenetix with sales and marketing brochures describing the product. Frutarom and BLIS Technologies encouraged Imagenetix to manufacture, market, and sell a BLIS K12™ product.

9. Following this meeting, Imagenetix agreed to invest in a BLIS K12™ product. Frutarom drafted a "Supply and Marketing Agreement" (the "Agreement"), which provided that Frutarom would supply Imagenetix with BLIS K12™. In the Agreement, Frutarom explicitly warranted that BLIS K12™ "shall conform to all applicable Federal, State and local laws, regulations and rules[.]" The parties signed the Agreement on September 1, 2009.

10. After signing the Agreement, Imagenetix made substantial investments in BioGuard™, a product that incorporated BLIS K12™. Specifically, Imagenetix contracted with a third party to manufacture BioGuard™, purchased substantial quantities of materials (including BLIS K12™) to manufacture BioGuard™, invested in sales and marketing of BioGuard™, test marketed BioGuard™, and entered into agreements with large retailers to distribute BioGuard™. By November of 2010, BioGuard™ was being sold nationwide in Costco and Rite Aid, and Imagenetix had plans to sell the product to other national retailers.

11. Shortly after the product's launch, a consumer purchased a bottle of BioGuard™ and complained to Imagenetix that the product had made his wife ill. Imagenetix subsequently reviewed the BLIS K12 safety studies and technical materials provided by BLIS Technologies. During the course of its investigation, Imagenetix realized that sales of BLIS K12™ were not authorized by the Food and Drug Administration ("FDA"). Specifically, Frutarom was required to submit BLIS K12 to the FDA and undergo the new drug approval process. Frutarom did not do this.

COMPLAINT

12. Indeed, on October 22, 2008, the FDA issued an "Import Refusal," in which it stated that a BLIS K12™ product (BLIS K12™ Travel Guard) constituted an unapproved new drug for which an approved new drug application was required. Notwithstanding the FDA's Import Refusal, Frutarom sold BLIS K12™ in the United States to treat specific disorders such as tonsillitis, strep throat, and halitosis.

13. In marketing materials, and presumably in an effort to bypass a new drug application process, Frutarom represented that sales of BLIS K12™ were authorized as a "dietary ingredient." Dietary ingredients do not require an approved new drug application. Under the FDA's Dietary Supplement and Health Education Act ("DSHEA"), if a dietary ingredient was in commercial use prior to October 15, 1994, FDA regulations allow a company to continue to sell the ingredient without any submission to, or approval from, the FDA. But a new dietary ingredient introduced on or after October 15, 1994, requires that the manufacturer provide the FDA with safety data and other information at least 75 days in advance of introducing a new dietary ingredient into interstate commerce.

14. The active ingredient in BLIS K12™ is *Salivaricin B*. *Salivaricin B* is an antibacterial protein produced by *S. Salivarius K12*, a unique strain of the naturally occurring microorganism, *S. Salivarius*. *S. Salivarius K12*, and the lantibiotic *Salivaricin B*, did not exist in 1994. Because of the product's novelty, BLIS Technologies secured a patent on *Salivaricin B* on August 10, 2004. In introducing Imagenetix to BLIS K12™, Mr. Klein from BLIS Technologies described BLIS K12™ as unique because of *Salivaricin B*, which was not present in the naturally occurring *S. Salivarius* microorganism. A BLIS K12™ safety study that was provided to Imagenetix stated that "The BLIS K12 strain has had a 5 year history of commercial application as a probiotic in New Zealand, with approximately 150,000 doses administered to date." The study was done in 2006, which means that BLIS K12™ was in commercial use in 2001 at the earliest. Finally, Frutarom's marketing materials and sales brochures emphasized *S. Salivarius K12's* uniqueness and novelty.

15. Thus, Frutatrom's warranty in the Agreement that sales of BLIS K12™ were authorized by all regulatory agencies was false in one of two ways. First, BLIS K12™ was a drug product that required an approved new drug application. That BLIS K12™ was a drug product is

4

COMPLAINT

evidenced by Frutarom's marketing claims that BLIS K12™ treats disorders such as tonsillitis, strep throat, and halitosis. For example, one brochure stated "this particular K12 strain of *S. Salivarius* secretes powerful antimicrobial molecules called BLIS (Bacteriocin-Like Inhibitory Substances), with the ability to destroy harmful bacteria such as the bacteria responsible for "strep" sore throat and other upper respiratory infections."[1] Further, in order to qualify as a dietary supplement, a product must be ingested; BLIS K12™ is efficacious without being ingested and therefore qualifies as a drug product.

16. Frutarom never disclosed to Imagenetix that the FDA had issued an Import Refusal notice in which the FDA found that a BLIS K12™ product constituted an unapproved new drug.

17. Second, even if BLIS K12™ were a dietary supplement, Frutarom was required to submit to the FDA – at least 75 days before selling the product – safety data and other information and allow the FDA to evaluate the product's safety, as the active ingredient in BLIS K12™ is *Salivaricin B*, produced by the unique *S. Salivarius K12* strain, which did not exist prior to October 15, 1994. Frutarom did not do this.

18. After learning that sales of BLIS K12™ were not authorized by the FDA, Imagenetix promptly pulled BioGuard™ from all retail outlets and shipped all unopened, unused raw material BLIS K12™ back to Frutarom.

19. Frutarom has refused to compensate Imagenetix for its BLIS K12™ investments. Imagenetix therefore seeks damages for the costs incurred in manufacturing, marketing, and selling BioGuard™, lost profits, loss of goodwill, and other damages.

## FIRST CLAIM FOR RELIEF

(Breach of Contract)

20. Imagenetix incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

21. The parties entered into the Agreement as alleged herein. Imagenetix fully performed its obligations and duties under the Agreement except those which it was excused from performing or prevented from performing due to Frutarom's conduct.

---

[1] Frutarom Marketing Brochure: "BLIS K12 Advanced Oral Cavity Probiotic that Protects the Gateway to the Body's Health," p. 1.

22. Frutarom's warranty in the parties' Agreement that "the Raw Material [BLIS K12™] shall conform to all applicable Federal, State and local laws, regulations and rules" was false. Sales of BLIS K12™ were not authorized by the FDA. Frutarom therefore breached its contract with Imagenetix.

23. Imagenetix has sustained significant damages as a result of Frutarom's breach of contract. Imagenetix made substantial investments in manufacturing, marketing, and selling its BLIS K12™ product, BioGuard™. Further, as a result of the BioGuard™ discontinuation, Imagenetix's reputation has been damaged, and it has lost business opportunities to sell other Imagenetix products through national retailers with which it previously did profitable business. Imagenetix seeks damages for the costs incurred in manufacturing, marketing, and selling BioGuard™, lost profits, loss of goodwill, and other damages.

## SECOND CLAIM FOR RELIEF

(Intentional Misrepresentation)

24. Imagenetix incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

25. Frutarom knew or recklessly disregarded the fact that sales of BLIS K12™ were not authorized by the FDA. Frutarom intentionally misrepresented that BLIS K12™ was a dietary ingredient and that sales of the product were authorized by the FDA.

26. Imagenetix reasonably relied on Frutarom's misrepresentation regarding the approval status of BLIS K12™ when it signed the Agreement and subsequently made substantial investments in BioGuard™.

27. Due to Imagenetix's reliance on Frutarom's intentional misrepresentation, Imagenetix was harmed and seeks damages for the costs incurred in manufacturing, marketing, and selling BioGuard™, lost profits, loss of goodwill, and other damages.

28. Frutarom's acts set forth herein were committed willfully and maliciously, with the wrongful and deliberate intention of injuring Imagenetix, and with a conscious disregard for Imagenetix's rights and Frutarom's obligations under California law. Therefore, in addition to all

other types of relief requested herein, Imagenetix is entitled to recover punitive and exemplary damages in amounts according to proof at the time of trial.

### THIRD CLAIM FOR RELIEF

(Negligent Misrepresentation)

29. Imagenetix incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

30. Frutarom represented to Imagenetix that BLIS K12™ conformed to all applicable Federal, State and local laws, regulations and rules.

31. Frutarom's representations were in fact false.

32. Frutarom had no reasonable grounds for believing the representations were true when they made them.

33. Frutarom intended that Imagenetix rely on the representations.

34. Imagenetix reasonably relied upon such representations, signed the Agreement with Frutarom, ordered the raw material BLIS K12™, and incorporated it into Imagenetix's BioGuard™ product.

35. Due to Frutarom's negligent misrepresentation, Imagenetix was harmed and suffered damages in terms of costs incurred in manufacturing, marketing, and selling BioGuard™, lost profits, loss of goodwill, and other damages. Reasonable reliance on Frutarom's representations was a substantial factor in causing that harm.

### FOURTH CLAIM FOR RELIEF

(Fraud in the Inducement)

36. Imagenetix incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

37. Frutarom knew or recklessly disregarded the fact that sales of BLIS K12™ were not authorized by the FDA.

38. Frutarom's misrepresentations about the regulatory status of BLIS K12™ induced Imagenetix to sign the Agreement and subsequently make substantial investments in BioGuard™.

COMPLAINT

39. Due to Frutarom's fraudulent inducement to contract, Imagenetix was harmed and seeks damages for the costs incurred in manufacturing, marketing, and selling BioGuard™, lost profits, loss of goodwill, and other damages.

40. Frutarom's acts set forth herein were committed willfully and maliciously, with the wrongful and deliberate intention of injuring Imagenetix, and with a conscious disregard for Imagenetix's rights and Frutarom's obligations under California law. Therefore, in addition to all other types of relief requested herein, Imagenetix is entitled to recover punitive and exemplary damages in amounts according to proof at the time of trial.

## FIFTH CLAIM FOR RELIEF

(Violation of California Business and Professions Code § 17200)

41. Imagenetix incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

42. The conduct of Frutarom as described above, including, among other things, misrepresentation that BLIS K12™ met all regulatory requirements, and use of that misrepresentation to induce Imagenetix to enter into the Agreement, constitutes unfair and unlawful business acts under Section 17200 of the California Business and Professions Code.

43. As a direct and proximate result of Frutarom's unfair and unlawful course of conduct, Imagenetix is entitled to restitution under Section 17203 of the California Business and Professions Code.

## PRAYER FOR RELIEF

WHEREFORE, Imagenetix prays:

a. That the Court enter judgment in favor of Imagenetix against Defendant on all counts;

b. That the Court award Imagenetix all of its damages associated with the breach of contract action asserted in this complaint, including incidental and consequential damages flowing from Defendant's conduct;

c. That the Court award Imagenetix damages associated with loss of distribution rights and loss of goodwill flowing from Defendant's breach, in accordance with Paragraph 16(f) of the Supply and Marketing Agreement;

d. That the Court award Imagenetix punitive damages for Defendant's intentional misrepresentations of fact and fraudulent inducement;

e. That the Court award Imagenetix reasonable attorney fees incurred in connection with this action, in accordance with Paragraph 17(e) of the Supply and Marketing Agreement;

f. That the Court award Imagenetix costs and expenses incurred in connection with this action;

g. That the Court award such other and further relief to Imagenetix as this Court deems just and proper.

Respectfully submitted,

**LAW OFFICE OF GREGORY P. OLSON**

Dated: November 21, 2012

s/Gregory P. Olson
Attorney for Plaintiff
Email: greg@olsonesq.co

and

KOTCHEN & LOW LLP
DANIEL KOTCHEN
AIMEE DOYLE

## JURY DEMAND

Plaintiff Imagenetix, Inc. hereby demands a jury trial.

Respectfully submitted,

**LAW OFFICE OF GREGORY P. OLSON**

Dated: November 21, 2012

s/Gregory P. Olson
Attorney for Plaintiff
Email: greg@olsonesq.co

and

KOTCHEN & LOW LLP
DANIEL KOTCHEN
AIMEE DOYLE

COMPLAINT