1  Frederick R. Ball (pro hac vice) (Ill. 6236660)
   Keith Zakarin (SBN 126528)
2  Jason M. Ohta (SBN 211107)
   Rebecca G. Church (SBN 259652)
3  **DUANE MORRIS LLP**
   750 B Street, Suite 2900
4  San Diego, CA 92101-4681
   Telephone:  (619) 744-2200
5  Facsimile:  (619) 744-2201
   E-mail:     frball@duanemorris.com
6              kzakarin@duanemorris.com
               johta@duanemorris.com
7              rchurch@duanemorris.com

8
   Attorneys for FRUTAROM USA, INC.
9

10
                    UNITED STATES DISTRICT COURT
11
                    SOUTHERN DISTRICT OF CALIFORNIA
12

13
   IMAGENETIX, INC.,                    | Case No. 12CV2823 GPC (WMc)
14
            Plaintiff and Counter       | **REPLY BRIEF IN SUPPORT OF
15          Defendant,                   | FRUTAROM USA, INC.'S
                                         | MOTION FOR SUMMARY
16      v.                               | JUDGMENT**

17                                       | Date:   December 13, 2013
   FRUTAROM USA, INC.,                   | Time:   1:30 p.m.
18                                       | Dept:   2D
            Defendant and                | Judge:  Hon. Gonzalo P. Curiel
19          Counterclaimant.

## I. INTRODUCTION

Imagenetix's entire case is premised upon a claim that Blis K12 violated the Food and Drug Administration's ("FDA") regulations. Imagenetix wants the Court to decide this question as a matter of law. But the FDA has never found that Imagenetix's BioGuard product containing Blis K12 (*Streptococcus salivarious*) is an unapproved new drug. The FDA has never found that Blis K12 is an unapproved new dietary ingredient ("NDI") or an unapproved new drug. Neither the FDA, the California Health and Human Services, nor any other state or federal agency charged with monitoring the health and safety of drugs or dietary supplements has found that the marketing, distribution or sale of Blis K12 violated any law.

The Court is not the proper entity to decide an issue reserved for the specialized expertise and competency of the FDA, and that would impact the uniform interpretation of FDA regulations.

Frutarom requests that the Court simply decline to decide whether the marketing, distribution or sale of Blis K12 violated any law, an issue of first impression, and defer to the primary jurisdiction of the FDA. In the alternative, the Court should find that Imagenetix's action against Frutarom is preempted. Allowing private litigants to force the piecemeal, potentially inconsistent application of FDA law conflicts with the scheme created by Congress in establishing the FDA with specialized expertise and competency and endowing it with the authority to determine whether a product is a drug, food, dietary supplement, old dietary ingredient ("ODI") or NDI.

Finally, even assuming that there was a problem with the marketing, distribution or sale of Blis K12, Imagenetix did not give Frutarom an opportunity to cure the problem. This is not surprising because Imagenetix, at the time it was receiving deliveries under the contract, had no problem with the legality of the ingredient. Imagenetix only challenged the legality of Blis K12 over one year after both parties walked away from the contract. This is in order to get Imagenetix out of

its financial difficulties and to prevent Frutarom from being paid for the debt owed by Imagenetix to Frutarom.

## II. ARGUMENT

### A. Imagenetix's Claims Are Subject to Primary Jurisdiction

Imagenetix concedes that the primary jurisdiction principles stated in *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114-15 (9th Cir. 2008), apply in this case. Courts abstain from ruling on issues under the primary jurisdiction doctrine if a claim "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id.* at 1114 (internal quotations and citations omitted).

Imagenetix fails to address all four *Clark* factors that take into account the principles identified above, asserting incorrectly that courts resort to "primary jurisdiction only where the relevant regulatory agency is actively considering new regulations or there is no guidance (formal or informal) from the agency."[1] *Pl.'s Opp'n* at 2 (emphasis added) (*citing Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *6 n.55 (N.D. Cal. Aug. 9, 2013); *Astiana v. Hain Celestial Group*, 905 F. Supp. 2d 1013, 1016 (N.D. Cal 2012)). Imagenetix is wrong. *Trazo* and *Astiana* do not support such a sweeping proposition.

In *Trazo*, a false labeling case, the court merely noted (in a footnote) that "courts in the Northern District of California have generally declined to dismiss the complaint on primary jurisdiction grounds absent concrete evidence that the FDA [was] currently involved in creating a new regulation concerning the subject of the

---

[1] In *Clark*, the court weighed the following four factors in deciding whether to exercise its discretion and apply primary jurisdiction abstention: "(1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.* at 1115 (citations omitted); *see also Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

lawsuit." *Trazo*, 2013 WL 4083218, at *6 (*citing Hood v. Wholesoy & Co., Modesto Wholesoy Co. LLC*, 2013 WL 3553979, at *5 (N.D. Cal. July 12, 2013)). The *Trazo* court never analyzed the issue under the four factors outlined in *Clark* or stated that primary jurisdiction was only proper when the FDA was actively considering new regulations. In fact, *Trazo* specifically relied upon *Hood*, a Northern District of California case that dismissed the complaint on primary jurisdiction grounds deferring to FDA's expertise on food labeling. *See Hood*, 2013 WL 3553979, at *5 ([W]here determination of a plaintiff's claim would require a court to decide an issue committed to the FDA's expertise without a clear indication of how FDA would view the issue, courts of this district have repeatedly found that dismissal or stay under the primary jurisdiction doctrine is appropriate.") (citing cases).[2]

In *Astiana*, another false labeling case, the court dismissed plaintiffs' complaint under the primary jurisdiction doctrine because Congress "entrusted the task of guarding against deception to the FDA." *Astiana*, 905 F. Supp. 2d at 1015 (*citing Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1177 (9th Cir. 2012)). The court did not broadly state that primary jurisdiction <u>only</u> applied to issues where there was no guidance from the FDA. The court declined to rule on the deception issue because such a decision would "undermin[e], through private litigation, the FDA's considered judgments." *Id.* (citation omitted).

### 1.    This Case Involves Issues of First Impression

Imagenetix asserts that the "FDA has staked out a legal position on each of the issues through industry guidance and/or warning letters" but fails to cite to any such FDA authority. *Pl.'s Opp'n* at 3. No such authority exists. The FDA has never determined whether Blis K12 is an unapproved new drug or NDI subject to FDA

---

[2] On the one hand, Imagenetix complains that *Hood* is an "outlier" case in the application of the primary jurisdiction doctrine and should not be given much weight, *Pl.'s Opp'n* at 3-4, yet cites a case (*Trazo*) that specifically relies on *Hood* in support of Imagenetix's primary jurisdiction arguments. Imagenetix cannot have it both ways.

regulations. Imagenetix's principal concedes that the FDA has never found that Blis K12 or BioGuard was an unapproved new drug, an unapproved NDI or that its distribution somehow violated the FDCA. *See* Def.'s Separate Statement of Undisputed Material Facts ("UMF") ¶ 6. Imagenetix's claims are by definition issues of first impression subject to the primary jurisdiction of the FDA.

Imagenetix then string cites every primary jurisdiction labeling case out of the Northern District of California in support of its argument that primary jurisdiction should not apply here. Imagenetix's reliance on these cases is misplaced.

Imagenetix's lead case, *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 3703981, *17 (N.D. Cal. Jul. 12, 2013), was vacated by *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013), where the court never analyzed primary jurisdiction.

Most importantly, the other referenced district court cases all dealt with allegations that defendants' products were misbranded, *i.e.*, whether the products' labeling could mislead a reasonable consumer. *See, e.g., Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 960 (N.D. Cal. 2013) ("[E]very day courts decide whether conduct is misleading, and the reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve.") (internal quotations and citations omitted). FDA's regulations and policies have already addressed many issues involving product misbranding, as seen in Imagenetix's cited cases, which makes the application of primary jurisdiction unnecessary.

Unlike the cases Imagenetix relies on where the courts were asked only to enforce what the FDA *already required*, this case by contrast asks this Court to interpret what the FDA *might find* regarding Blis K12's status as a drug, NDI or ODI. Such determination should be left to the expertise of the FDA. *See, e.g., Clark*, 523 F.3d at 1114-15.

### 2. Imagenetix's Reliance on Cases Brought by the FDA are Improper

Imagenetix concludes, again without the benefit of any supporting facts, that the exercise of primary jurisdiction would be improper because the issues do "not include complex technical questions that require FDA's guidance." *Pl.'s Opp'n* at 4. Imagenetix supports its position by citing cases brought by the United States on behalf of the FDA. *See id.* at 4-5. Once again, Imagenetix's support is misplaced.

The Ninth Circuit has held that "deference to an agency's primary jurisdiction makes little sense in the context of an enforcement proceeding initiated by the agency .... The agency's view of the question is clear and will have to be substantiated for the agency to prevail in court ...." *United States v. Western Serum Co., Inc.*, 666 F.2d 335, 338 (9th Cir. 1982) (*citing United States v. Alcon Laboratories*, 636 F.2d 876 (1st Cir. 1981)). It follows that courts would not dismiss the cases cited by Imagenetix based on primary jurisdiction because those courts had the benefit of the agency's expertise.

The cases Imagenetix relies on are all brought by the United States on behalf of the FDA. The *Clark* factors simply do not apply in those cases because the agency, through the United States, requested a determination on a particular issue that has been placed within its regulatory authority. In contrast, here Imagenetix is the plaintiff and the Court does not have the benefit of the FDA's expertise. Therefore, dismissal under the doctrine of primary jurisdiction is proper.

### 3. Primary Jurisdiction is Appropriate in a Breach of Contract Case Based on Violations of the FDCA

Imagenetix contends that this case is not appropriate for primary jurisdiction because this is a breach of contract suit. *Pl.'s Opp'n* at 5. Specifically, Imagenetix states that, unlike FDA false advertising cases, there is no risk of conflicting decisions in breach of contract actions. *Id.* at 5-6. Imagenetix is wrong. This is a distinction without any difference.

Imagenetix's breach of contract claim rests on an allegation that Frutarom violated the warranty provision of the Supply and Marketing Agreement by providing

Imagenetix with product that did not comply with the FDCA. Therefore, to prevail Imagenetix must prove and the Court must find that distribution of Blis K12 violated the FDCA. This is not a simple breach of contract case where one party has failed to pay another party for goods delivered or services rendered. This is a complicated matter involving the determination of whether a particular strain of *Streptococcus salivarious* is an unapproved new drug, an NDI, or that the distribution of Blis K12 somehow violated the FDCA. As stated previously, this determination is appropriately left to the expertise of the FDA.[3] Imagenetix recognizes this when it admitted that the FDA has not determined that the distribution, marketing or sale of Blis K12 or BioGuard violated the FDCA. *See* Def.'s UMF ¶ 6.

### 4. Imagenetix May Petition the FDA for a Ruling on the Legality of Blis K12

Imagenetix argues that primary jurisdiction should not be followed because it has "no avenue ... to obtain an FDA ruling on the legality of the Blis K12 that was delivered under the contract." *Pl.'s Opp'n* at 6. Imagenetix is wrong.

Imagenetix may ask the FDA to make the determination whether the distribution of Blis K12 by Frutarom violated the FDCA by filing a Citizen's Petition. *See* 21 C.F.R. § 10.30. Imagenetix could have filed a Citizen's Petition regarding Blis K12 anytime in 2009, 2010, 2011, 2012 or to date. Imagenetix clearly is familiar with dealing with the FDA as its attorneys submitted a letter to the agency notifying them of Imagenetix's marketing statements regarding the sale of BioGuard. *See* Ex. G to Frutarom's Opp'n to Imagenetix's Mot. For Partial Summ. Judg. (Doc. No. 36-3). Imagenetix's failure to avail itself of the Citizen's Petition process should not allow

---

[3] Imagenetix states that "[w]here the FDA has been faced with calls to provide guidance but has declined to do so, courts have refused to apply primary jurisdiction on the grounds that the FDA's inaction demonstrates that uniformity is not critical." *Pl.'s Opp'n* at 6 (citing district court cases). Imagenetix does not provide any evidence that the FDA was ever "faced with calls to provide guidance" regarding whether Blis K12 was an unapproved new drug or NDI. Thus, the cases relied on by Imagenetix are all inapplicable.

Imagenetix to burden this Court with this issue or avoid the primary jurisdiction doctrine.

Presumably, if the FDA had a problem with the incorporation of Blis K12 into BioGuard, then it would have responded to Imagenetix's letter. That it did not do so is telling. Imagenetix now, long after it ceased marketing BioGuard with FDA acquiescence, asks this Court to do what the FDA could have done, but did not, based on pure speculation that the FDA would have found the sale, distribution or marketing of Blis K12 somehow violated the FDCA. Because this area falls within the specialized expertise of the FDA, the Court should decline to do so.

### 5. Frutarom's Primary Jurisdiction Arguments Are Timely

Imagenetix fails to cite to any authority which holds that primary jurisdiction arguments may only be raised during a motion to dismiss. *Pl.'s Opp'n* at 7. No such authority exists. And the one Ninth Circuit case Imagenetix does refer to undercuts its timeliness argument. *See id.* (citing *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1051 (9th Cir. 2000)).

The *Chabner* court simply did not deny defendant's request because it was brought after the pleading stage in the litigation. On the contrary, the court declined on the merits to invoke primary jurisdiction at the summary judgment stage. 225 F.3d at 1051 n.8. Imagenetix has not cited any case supporting its "waiver" argument. Thus, Frutarom's arguments are timely.[4]

### B. Imagenetix's Claims are Preempted

Imagenetix argues that its various contract claims against Frutarom, all premised upon Blis K12's violation of FDA regulations, escape preemption because they are parallel to federal requirements. *See Pl.'s Opp'n* at 11. This argument fails because is based on a misunderstanding of the definition of parallel claim.

---

[4] Moreover, Frutarom concurrently moved for judgment on the pleadings along with its summary judgment motion. *See* Def.'s Mot. for Summ. Judg. at 1 n. 1 (Dkt. No. 45).

As the Ninth Circuit clarified in *Stengel v. Medtronic*, 704 F.3d 1224, 1232-33 (9th Cir. 2003), a state-law claim based on a state-law duty that parallels a federal-law duty is not preempted by the FDCA. In *Stengel*, plaintiffs alleged that Medtronic failed to warn the FDA about known dangerous complications. *Id.* at 1233. Plaintiffs plead a state law failure to warn tort claim based on well-established Arizona law that manufacturers have a duty to "produce products with appropriate warning instructions." *Id.* Arizona law provided that "a manufacturer of a product must warn of danger which he knows or should know are inherent in its use. This duty may be a continuing one applying to dangers the manufacturer discovers after the sale." *Id.*

Therefore, plaintiffs' claim was based not just on FDA requirements that the manufacturers notify the FDA of known complications (*i.e.*, adverse events) but on a parallel state duty of manufacturers to warn third parties of known dangers of products. Plaintiffs, through their claims, sought to enforce a state duty to warn – a duty which had a counterpart or parallel in federal regulations. Similarly, the plaintiffs in *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 481 (1996), *Hughes v. Boston Scientific Corp.*, 631 F.3d 762, 765 (5th Cir. 2011) and *Bausch v. Stryker Corp.*, 630 F.3d 546, 549 (7th Cir. 2010) all based their claims upon a manufacturer's violation of a state law duty to warn consumers of product dangers.

Although "certain state-law causes of action that parallel federal safety requirements" survive preemption as set forth above, the case law, however, does not "stand for the proposition that any violation of the FDCA will support a state-law claim." *Buckman*, 531 U.S. at 352-53. A state law claim based on FDCA violations does not survive preemption if it is not "parallel," *i.e.*, if it does not rely on traditional tort law but "exist[s] solely by virtue of the FDCA . . . requirements." *Buckman*, 531 U.S. at 347-48. In *Buckman*, plaintiffs did not try to enforce a general state law duty owed to them but were rather concerned exclusively with alleged fraud on the FDA. *Id.* Because plaintiffs' claims existed solely by virtue of the FDCA requirements, they "conflict with, and are therefore impliedly preempted by" the FDCA because the

statutory scheme amply empowers the FDA to enforce its own regulations. *Stengel*, 704 F.3d at 1229 (*citing Buckman*, 531 U.S. at 348).

Imagenetix, like the plaintiffs in *Buckman*, do not allege a parallel claim. Imagenetix's contract claims exist solely by virtue of the FDA regulations. If the FDA regulations governing the requirements for a new drug or dietary ingredients did not exist, Imagenetix's contract claims could not exist. Imagenetix does not and cannot point to a general state law duty independent of the federal requirements upon which it rests its claims.

Allowing private plaintiffs to dispute piecemeal the legality of certain products under FDA regulations (or force the litigation regarding the FDA status of such products as leverage in a contract dispute or to avoid paying legitimate debts) would "exert an extraneous pull on the scheme established by Congress" which envisions the FDA as the agency to interpret and enforce its regulations with regard to drug products. *Buckman*, 531 U.S. at 353. Because allowing such piecemeal litigation would conflict with the Congressional objectives in enacting the FDCA, the Court should find these claims preempted.

### C. Imagenetix's Claims Are Barred by the Notice and Cure Provisions of the Supply and Marketing Agreement

Assuming the Court does not dismiss Imagenetix's Complaint based on the doctrines of primary jurisdiction or preemption, Imagenetix's claims are barred by the Supply and Marketing Agreement's notice and cure provisions.[5]

---

[5] Imagenetix makes the incredible assertion that Frutarom has waived any arguments regarding its notice and cure claims because "<u>Imagenetix</u> previously raised these arguments in <u>its Reply</u> in Support of its Motion for Partial Summary Judgment." *Pl.'s Opp'n* at 12 n.11 (emphasis added). Frutarom has properly raised its notice and cure arguments in its motion for summary judgment. *See* Dkt. No. 45. Frutarom's arguments were not brought for the first time in its reply brief, which would be improper. *See, e.g., Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief.").

A party is barred from bringing any claim or defense under a contract where the party breaches the agreement's provision to provide notice and an opportunity to cure. *See Maykuth v. Adolph Coors Co.*, 690 F.2d 689, 694 (9th Cir. 1982) (finding breach of contract by Coors due to failure to provide plaintiff an opportunity to cure under the contract).

Here, Imagenetix never denies that it notified Frutarom, for the first time, that Blis K12 allegedly did not comply with the FDCA on August 1, 2012. *See* Pl.'s Response to Def.'s Separate Statement of UMF in Support of Def.'s Mot. For Summ. Judg. ¶ 5. Imagenetix's notification was well after both parties agreed to terminate the Supply and Marketing Agreement. *See id.* ¶ 4. Imagenetix's arguments that it was relieved of its notice obligations because performance was illegal is incorrect. *Pl.'s Opp'n* at 13.

Imagenetix's claims are all under the assumption that Blis K12 is an unapproved new drug or NDI based on Frutarom's marketing of its product. Assuming Imagenetix is correct that Blis K12 is an unapproved new drug (it is not) or an unapproved NDI and assuming Imagenetix notified Frutarom of its position, Frutarom could have altered its marketing of Blis K12 or filed paperwork with the FDA and cured the problem. However, Imagenetix never gave Frutarom that opportunity. Accordingly, Imagenetix is barred from bringing any claim based on the Supply and Marketing Agreement because Imagenetix never informed Frutarom of any alleged violation of the FDCA and never provided Frutarom an opportunity to cure during the contract period.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Frutarom's motion for summary judgment.

Dated: November 22, 2013   **DUANE MORRIS LLP**

By: /s/ Jason M. Ohta
Jason M. Ohta
Attorneys for FRUTAROM USA, INC.